IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHELLE WOOTEN, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RDB-23-846 |
| MARYLAND CVS PHARMACY, LLC, | * | |
| *Defendant*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Michelle Wooten ("Plaintiff" or "Wooten") brings this action against Defendant Maryland CVS Pharmacy, LLC ("Defendant" or "CVS"), alleging claims of disability discrimination, harassment, and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C § 12101 *et seq*., and the Maryland Fair Employment Practices Act ("MFEPA"). (ECF No. 1.)[1]  Currently pending before this Court is Defendant's Motion to Compel Arbitration and Stay Proceedings (the "Motion") (ECF No. 15).  The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023).  For the reasons stated herein, Defendant's Motion to Compel Arbitration and Stay Proceedings (ECF No. 15) is GRANTED.

## BACKGROUND

Since at least October 2014,[2] Plaintiff Michelle Wooten[3] has been employed as a

---

[1] For clarity, this Memorandum Opinion cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated.
[2] Both parties' submissions suggest that Wooten is presently employed by CVS. (ECF No. 15-1 at 2; ECF No. 16 at 2.)
[3] Paragraph 1 of the Complaint erroneously identifies the Plaintiff as "Danielle Davis."  (ECF No. 1 ¶ 1.)

1

pharmacy technician with Defendant Maryland CVS Pharmacy, LLC.[4]  (ECF No. 1 ¶ 5; ECF No. 15-1 at 5.)

In 2014, CVS introduced an "Arbitration of Workplace Legal Disputes" policy (the "Arbitration Policy") under which participating colleagues—i.e., employees—and CVS each waive the right to bring any claims in court arising out of or related to a participating colleague's employment, agreeing instead to submit such employment-related disputes to binding arbitration.  (ECF No. 15-1 at 2, 19.)  The Arbitration Policy states, in relevant part:

1. **Mutual Obligation to Arbitrate.** Under this Policy, CVS Health (including its subsidiaries) and its Employees agree that any dispute between an Employee and CVS Health that is covered by this Policy ("Covered Claims") will be decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum, except as otherwise provided in this Policy. This Policy is an agreement to arbitrate disputes covered by the Federal Arbitration Act (9 U.S.C. §§ 1–16). Employees accept this Policy by continuing their employment after becoming aware of the Policy.

2. **Claims Covered by This Policy.** Except as otherwise stated in this Policy, Covered Claims are any and all legal claims, disputes or controversies that CVS Health may have, now or in the future, against an Employee or that an Employee may have, now or in the future, against CVS Health, its parents, subsidiaries, successors or affiliates, or one of its employees or agents, arising out of or related to the Employee's employment with CVS Health or the termination of the Employee's employment.

   Covered Claims include but are not limited to disputes regarding . . . harassment, discrimination, retaliation and termination arising under the Civil Rights Act of 1964, Americans with Disabilities Act . . . and other federal, state and local statutes, regulations and other legal authorities relating to employment.

   Covered Claims also include disputes arising out of or relating to the validity, enforceability or breach of this Policy, except as provided in the section below regarding the Class Action Waiver.

---

[4] Paragraph 2 of the Complaint erroneously identifies the Defendant as "Morgan Properties Management Company, LLC." (ECF No. 1 ¶ 2.)

(ECF No. 15-1 at 25–26.)

Beginning in 2014, CVS colleagues were invited to participate in a training course "Arbitration of Workplace Legal Disputes (Course No. 800305)" (the "Arbitration Training Course") regarding the Arbitration Policy, which included the CVS Health Colleague Guide to Arbitration ("Arbitration Policy Guide"). (*Id.* at 20, 22, 30–50.) Colleagues who, like Wooten, were employed by CVS at the time the Arbitration Policy was introduced, were instructed to complete the Arbitration Training Course through CVS's LEARNet system and by his or her manager. (*Id.* at 22.) Both the Arbitration Training Course and Arbitration Policy Guide "educate colleagues on their rights as they relate to arbitration, the manner in which a colleague accepts the terms of the Arbitration Policy, and how to opt out of the Arbitration Policy." (*Id.* at 20–21.) Of import here, the Arbitration Policy Guide reviewed as part of the Arbitration Training Course provides:

> **Colleagues' Rights**
>
> The arbitration policy is not meant to discourage or prevent colleagues from filing a complaint with or participating in an investigation by any federal, state or local office or agency, including but not limited to the U.S. Department of Labor, Equal Employment Opportunity Commission or National Labor Relations Board. (Indeed, to bring certain legal claims, a colleague must file a complaint with one of these agencies first. The arbitration policy does not affect that obligation.) CVS Health recognizes and respects colleagues' rights to engage with these public authorities, and, as always, we will not retaliate against any colleague who exercises these legal rights.
>
> Arbitration is a matter of contract between the colleague and CVS Health. Colleagues accept the policy by continuing their employment with CVS Health after becoming aware of the policy. With that being said, we want colleagues' participation to be voluntary. Colleagues will be asked to acknowledge and agree to the policy, but from the time that a colleague first views or receives the policy, he or she has thirty days to opt out of the policy. If a colleague opts out, he or she will not be obligated to go to arbitration

3

and can continue to use the traditional court system as before. Likewise, if a colleague opts out, CVS Health will not be required to arbitrate any disputes it has with that colleague.

**How to Opt Out**

In order to opt out, a colleague must mail a written, signed and dated letter stating clearly that he or she wishes to opt out of the CVS Health Arbitration of Workplace Legal Disputes Policy. The letter must be mailed to CVS Health, P.O. Box 969, Woonsocket, RI 02895. In order to be effective, the colleague's opt out notice must be postmarked no later than 30 days after the date the colleague first views or receives the policy. Please note, sending in a timely notice is the **only** way to opt out. A colleague cannot opt out by refusing to complete training or attend meetings about the policy.

CVS Health will not tolerate retaliation against any colleague who decides to opt out.

(*Id.* at 59.)

To complete the Arbitration Training Course, colleagues are required to select "Yes," "acknowledging and agreeing" to the following:

> [T]hat I have carefully read the CVS Health Policy, "Arbitration of Workplace Legal Disputes" . . . and understand that it applies to me;
>
> . . .
>
> [T]hat I have the opportunity, for a limited time only, to opt out of the Policy and, by doing so, not be bound by its terms;
>
> [T]hat, to opt out, I must mail a written, signed and dated letter, stating clear1y that I wish to opt out of this Policy to CVS Health . . . , which must be postmarked no later than 30 days after the date I first received or viewed a copy of this Policy;
>
> [T]hat by being covered by the Policy and not opting out, CVS Health and I are obligated to go to arbitration instead of court to resolve legal claims covered by the Policy;
>
> . . .
>
> [T]hat this electronic communication satisfies any requirement that such communication be in writing; and

4

> [T]hat my click of the "Yes" button creates an electronic signature that is legally binding.

(*Id.* at 49.) According to records maintained in LEARNet, Wooten completed the Arbitration Training Course on October 21, 2014. (*Id.* at 22, 66.) Defendant submits—and Wooten does not dispute—that Plaintiff never sent an opt out notice to CVS. (*Id.* at 6, 23.)

Sometime during her employment with CVS, Wooten became pregnant and the pregnancy was high-risk, constituting a temporary disability and requiring that she sit down while performing her work. (ECF No. 1 ¶¶ 5–9.) It is the Defendant's alleged mistreatment of Wooten during this time that gives rise to the instant lawsuit, which Plaintiff initiated on March 28, 2023. Wooten's Complaint brings claims of disability discrimination, harassment, and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C § 12101 *et seq.*, and the Maryland Fair Employment Practices Act ("MFEPA") against CVS. (ECF No. 1.) In sum, Wooten alleges that she advised her employer of her condition, but CVS failed to grant her an accommodation within a prompt time frame, (ECF No. 1 ¶¶ 12, 22–29), and her manager Aviva Jacobs harassed her by constantly complaining "about Plaintiff sitting at work." (*Id.* ¶¶ 13, 32–36.) Lastly, Wooten alleges that, after she complained about her manager's alleged harassment, Jacobs retaliated against her by placing her on temporary suspension for failing to clock out for lunch, even though Jacobs was aware that Wooten signed a meal waiver indicating that she did not have to sign out for lunch. (*Id.* ¶¶ 14–17, 39–42.)

CVS has moved to compel arbitration, pursuant to the Arbitration Policy and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and to stay proceedings pending arbitration. (ECF No. 15.) In opposition, Wooten argues that the Defendant is not a party

to the Arbitration Policy, (ECF No. 16 at 3–4); and that the Arbitration Policy is an unconscionable[5] contract of adhesion, and thus, void and unenforceable. (*Id.* at 4–9.) Defendant's Motion to Compel Arbitration (ECF No. 15) is ripe for review.

## STANDARD OF REVIEW

### I. Motion to Compel Arbitration

Defendant has filed the pending Motion to Compel Arbitration (ECF No. 15) pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*. Although motions to compel arbitration "exist in the netherworld between a motion to dismiss and a motion for summary judgment," the decision to treat a motion to compel as one or the other "turns on whether the court must consider documents outside the pleadings." *PC Constr. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477 (D. Md. 2012). Because the Arbitration Agreement is not integral to the Complaint, and thus the Court must consider the agreement itself as extrinsic evidence, the Court construes the Defendant's Motion to Compel Arbitration and Stay Proceedings (ECF No. 15) as a motion for summary judgment. *Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442, 454 (D. Md. 2020) ("Treating a motion to compel as a motion for summary judgment is proper where the formation or validity of the arbitration agreement is in dispute . . . or where documents outside the pleadings must be considered."). As this Court has previously noted, under Federal Rule of Civil Procedure 56(a), "motions to compel arbitration shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Thomas v. Progressive Leasing*, No. RDB-17-1249, 2017

---

[5] Plaintiff asserts that the contract is "unreasonable," (ECF No. 16 at 4–9), though her argument is better understood as a challenge to the contract as unconscionable. The Court construes Plaintiff's argument accordingly.

6

U.S. Dist. LEXIS 176515, at *2 (D. Md. Oct. 25, 2017) (citing FED. R. CIV. P. 56(a); *Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 251–52 (D. Md. 2011)).

Although the Fourth Circuit has characterized the standard of review on a Motion to Compel Arbitration as "*akin to* the burden on summary judgment," the pending motion will not be converted to or treated as a motion for summary judgment. On the contrary, the remedies available to a defendant moving to compel arbitration are limited to a stay or dismissal of the action. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) ("[T]he FAA requires a district court, upon motion by any party, to stay judicial proceedings involving issues covered by written arbitration agreements [citing 9 U.S.C. § 3] . . . Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable. [citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)].")

The standard of review on a Motion to Compel Arbitration pursuant to the FAA is "'akin to the burden on summary judgment.'" *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 85 (4th Cir. 2016) (quoting *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015)). Therefore, motions to compel arbitration "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Rose*, 816 F. Supp. 2d at 251–52.

## II. The Federal Arbitration Act

"Whether a party agreed to arbitrate a particular dispute is an issue for judicial determination to be decided as a matter of contract." *Johnson v. Circuit City Stores*, 148 F.3d

373, 377 (4th Cir. 1998) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986)).  The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, requires that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* at § 2; *see also Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) ("This text reflects the overarching principle that arbitration is a matter of contract." (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010))).  Arbitration agreements "may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 364 (2011) (internal citation omitted).  The FAA also requires that a federal court stay any proceedings that present a controversy which the parties have agreed to arbitrate.  9 U.S.C. § 3.  Moreover, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Despite this presumption, agreements to arbitrate are fundamentally about private choice.  "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).  Federal courts have the authority to compel arbitration, but in making that determination this Court is mindful that its role is

8

limited to determining the "question of arbitrability," or the "gateway dispute about whether the parties are bound by a given arbitration clause." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

The United States Court of Appeals for the Fourth Circuit has held that a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [opposing party] to arbitrate the dispute." *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991). "Agreements to arbitrate are construed according to the ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710 (4th Cir. 2001). State contract formation law determines the validity of arbitration agreements. *Concepcion*, 563 U.S. at 338–39; *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005). In Maryland, "the law of the jurisdiction where the contract was made controls its validity and construction." *Kramer v. Bally's Park Place, Inc.*, 535 A.2d 466, 467 (Md. 1988). As this case involves the issue of the validity of the arbitration agreement and because the contract was entered into by the parties in Maryland, Maryland law governs.

### III. Applicable Maryland Law

Under Maryland law, an agreement to arbitrate disputes is enforceable if it is a valid contract. *Hill*, 412 F.3d at 543. To determine the validity of the arbitration agreement, Maryland courts look at the four corners of an arbitration provision. *Id.* As with any contract,

9

the arbitration provision must be supported by adequate consideration in order to be valid and enforceable. *See Cheek v. United Healthcare*, 835 A.2d 656, 661 (Md. 2003).

## ANALYSIS

CVS moves this Court to compel Wooten to arbitrate her claims pursuant to the terms of the parties' agreement to arbitrate, pursuant to the Arbitration Policy and the FAA, and to stay the proceedings pending arbitration. (ECF No. 15.) CVS asserts that Wooten is precluded from litigating her claims before this Court because she is a party to a valid and enforceable arbitration agreement agreeing to arbitrate "any and all legal claims, disputes or controversies" that she had or may have against Defendant, including claims arising out of or relating to her employment, as well as any dispute over the arbitrability of those claims. (ECF No. 15-1 at 6–15.) In opposition, Wooten argues that the Defendant is not a party to the Arbitration Policy, (ECF No. 16 at 3–4); and that the Arbitration Policy is an unconscionable contract of adhesion, and thus, void and unenforceable. (*Id.* at 4–9.)

This Court finds that the parties entered into a valid arbitration agreement; that the arbitration agreement is not unconscionable; and that Defendant Maryland CVS Pharmacy, LLC is a party to the arbitration agreement. Accordingly, Defendant's Motion to Compel Arbitration and Stay Proceedings (ECF No. 15) is GRANTED.

### I. The Parties Entered into a Valid Arbitration Agreement.

The FAA "requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019) (citing 9 U.S.C § 2). Under Section 2 of the FAA, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.

10

§ 2; *see also AT&T Techs., Inc.*, 475 U.S. at 648–49. State contract formation law determines the validity of arbitration agreements. *Concepcion*, 563 U.S. at 338–39; *Hill*, 412 F.3d at 543.

Here, CVS alleges—and Plaintiff does not dispute—that Wooten completed an electronic training course titled "Arbitration of Workplace Legal Disputes" on or around October 21, 2014, which was formatted as a slideshow. (ECF No. 15-1 at 5, 12–13, 30–50, 66.) The third slide of the Arbitration Training Course (*id.* at 32) required an employee to click on a link to a PDF document titled "CVS Health Colleague Guide to Arbitration." (*Id.* at 20, 33–46.) An employee could not continue past the third slide unless she clicked the link to open the document. (*Id.* at 20.)

The Arbitration Policy Guide "educates colleagues on their rights as they relate to arbitration, the manner in which a colleague accepts the terms of the Arbitration Policy, and how to opt out of the Arbitration Policy." (*Id.*) The Arbitration Policy provides that "CVS Health (including its subsidiaries) and its Employees agree that any dispute . . . covered by this Policy . . . will be decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum . . . ." (*Id.* at 25.) It further provides that "Employees accept this Policy by continuing their employment after becoming aware of the Policy," and that "Covered Claims" are "any and all legal claims, disputes or controversies . . . that an Employee may have now, or in the future, against CVS Health, its parents, subsidiaries, successors, or affiliates," including "disputes arising out of or relating to the validity, enforceability or breach of this Policy . . . ." (*Id.* at 25–26.)

To complete the Arbitration Training Course, an employee was required to "acknowledge[] and agree[]" to certain terms. (*Id.* at 21–22.) This acknowledgment slide

11

stated, among other things, that the employee taking the course "ha[d] the opportunity, for a limited time only, to opt out of the Policy" by sending a "written, signed and dated letter" that was "postmarked no later than 30 days after the date [the employee] first received or viewed a copy of [the Arbitration Policy.]" (*Id.* at 49.) The slide also said that "by being covered by the Policy and not opting out, CVS Health and [the employee] are obligated to go to arbitration instead of court to resolve legal claims covered by the Policy[.]" (*Id.*) CVS has no record of receiving an opt-out letter from Plaintiff, and Wooten does not contend that she mailed an opt-out letter to Defendant. (*Id.* at 6, 23.)

Accordingly, CVS has established that Wooten agreed to be bound by the Arbitration Policy. Indeed, Plaintiff does not challenge that the Defendant's assertions that the essential elements of a contract have been satisfied. *See Baird v. Haith*, 724 F. Supp. 367, 375 (D. Md. 1988) (explaining that Maryland law specifies that a "valid contract requires an offer, acceptance of the offer, and consideration"). Rather, Wooten challenges the validity of the arbitration agreement on one basis—that the agreement was "an unreasonable and inequitable contract of adhesion[, and] as such, it is void on its face and is not enforceable." (ECF No. 16 at 16.) Her position, better understood as a challenge to the arbitration agreement as unconscionable, lacks merit.

The FAA permits agreements to arbitrate to be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 364 (internal citation omitted). An unconscionable contract has been defined "as one characterized by 'extreme unfairness,' which is made evident by '(1)

one party's lack of meaningful choice, and (2) contractual terms that unreasonably favor the other party.'" *Walther v. Sovereign Bank*, 872 A.2d 735, 743 (Md. 2005) (quoting BLACK'S LAW DICTIONARY (8th ed. 2004)).  The first form of extreme unfairness, the lack of meaningful choice, is referred to as procedural unconscionability; the second, terms that unreasonably favor one party, is referred to as substantive unconscionability.  *See id.* at 744.  A party must prove both procedural and substantive unconscionability in order to set aside an agreement.  *Rankin v. Brinton Woods of Frankfort, LLC*, 211 A.3d 645, 655 (Md. App. 2019).

Wooten primarily argues that the arbitration agreement was procedurally unconscionable because it was a "contract of adhesion," which is a contract "drafted unilaterally by the dominant party and then presented on a 'take it or leave it' basis to the weaker party who has no real opportunity to bargain about its terms."  *Walther*, 872 A.2d at 746.  Assuming arguendo that the policy was effectively a contract of adhesion, under Maryland law, "[a] contract of adhesion is not automatically deemed *per se* unconscionable."  *Id.*  In *Walther v. Sovereign Bank*, 872 A.2d 735 (Md. 2005), the court held that even if a contract is found to be a contract of adhesion, "that is not the end of the inquiry," and the court still "must examine the substance of the particular provision at issue . . . to decide whether it is unconscionable."  *Id.* at 746–47.  Notably, in that instance, the court found that an arbitration clause, even if deemed to be a contract of adhesion, was not invalid as unconscionable because of the lack of substantive unconscionability, in that the terms, which bound both parties to arbitrate certain disputes, were "not so unfairly oppressive as to make the agreement unconscionable."  *Id.* at 748.

Like in *Walther*, the arbitration agreement at issue here is not one-sided, but rather

13

binding on both parties. The "Mutual Obligation to Arbitrate" clause provided, in pertinent part, that:

> Under this Policy, CVS Health (including its subsidiaries) and its Employees agree that any dispute between an Employee and CVS Health that is covered by this Policy ("Covered Claims") will be decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum, except as otherwise provided in this Policy. This Policy is an agreement to arbitrate disputes covered by the Federal Arbitration Act (9 U.S.C. §§ 1-16). Employees accept this Policy by continuing their employment after becoming aware of the Policy.

(ECF No. 15-1 at 25.) Despite Wooten's argument to the contrary, the agreement further provided an opt-out provision whereby Wooten would have been released from the arbitration agreement by mailing in a "written, signed and dated letter stating clearly that . . . [she] wish[es] to opt-out of the [Arbitration Policy]" within thirty-days of first viewing or receiving the agreement. (*Id.* at 4–5, 21–22, 48–49, 59, 64.) A physical copy of the arbitration agreement was available to Plaintiff, and she successfully completed the Arbitration Training Course. (*Id.* at 48–49, 68.) By clicking "yes," she acknowledged and agreed that she carefully read the agreement and understood that it applied to her; had the opportunity to opt-out of the agreement and, by doing so, not be bound by its terms; was aware that to opt-out, she must have mailed a written, signed and dated letter; was aware that being covered by the agreement and not opting out, she and CVS were both obligated to go to arbitration instead of court to resolve legal claims covered by the agreement; was aware that the electronic communication satisfied any requirement that such communication be in writing; and that by clicking the "yes" button, she created an electronic signature that is legally binding. (*Id.* at 21–22, 48–49, 64.) Wooten was also informed that there would be no repercussion or retaliation or adverse consequence if she chose to opt-out. (*Id.* at 63.) By these terms, the arbitration agreement

14

was not an unconscionable contract of adhesion, but rather a valid and enforceable agreement.

## II. Defendant Maryland CVS Pharmacy, LLC Is a Party to the Arbitration Agreement.

Plaintiff's argument that Defendant Maryland CVS Pharmacy, LLC cannot enforce the arbitration agreement because it is not a party to the arbitration agreement is unconvincing. In brief, Wooten's argument is wholly undermined by the plain language of the Arbitration Policy, which explicitly states that the arbitration agreement applies to "any and all legal claims, disputes or controversies . . . that an Employee may have, now or in the future, against CVS Health, its parents, subsidiaries, successors or affiliates, or one of its employees or agents, arising out of or related to the Employee's employment with CVS Health." (ECF No. 15-1 at 25.) Defendant is undoubtedly a subsidiary or affiliate of CVS Health, (*id.* at 18), and Wooten does not seriously dispute as much, conceding in her opposition that "[CVS Health and Defendant] may be, and are expected to be, related or affiliated in some legal manner." (ECF No. 16 at 4.) Nevertheless, Wooten argues that "[t]he corporate structures of these companies, including the Defendant, ha[ve] not been presented as evidence." (ECF No. 16 at 4.) This Court declines to further entertain Plaintiff's attempt to dispute what is plainly obvious.[6]

## III. This Matter Will Be STAYED While the Parties Litigate Their Claims and Defenses Against Each Other Before an Arbitrator.

Because the Court concludes that the arbitration agreement is valid and enforceable, the Court also must stay the matter. *Gibbs v. Haynes Invests., LLC*, 967 F.3d 332, 337 (4th Cir.

---

[6] Maryland CVS Pharmacy, L.L.C. is a subsidiary of CVS Health Corporation according to the Exhibit 21 to CVS Health's most recent Annual Report. *See* CVS Health Corp., Annual Report (Form 10-K) (Feb. 8, 2023), available at https://www.sec.gov/Archives/edgar/data/64803/000006480323000009/exhibit211-2022.htm.

15

2020) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (holding that, when an agreement "clearly and unmistakably" delegates the threshold issue of arbitrability to the arbitrator, the Court must enforce that delegation clause and send that question to arbitration)); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) ("[T]he FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.' This stay-of-litigation provision is mandatory." (quoting 9 U.S.C. § 3)).

Accordingly, Defendant's Motion to Compel Arbitration and Stay Proceedings (ECF No. 15) is GRANTED.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Compel Arbitration and Stay Proceedings (ECF No. 15) is GRANTED.

A separate Order follows.

Date: January 26, 2024                             /s/
                                                   Richard D. Bennett
                                                   United States Senior District Judge